UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

TROI LINDSAY,

                Plaintiff,

       -against-

NEW YORK CHILD SUPPORT OCSS; NEW
JERSEY CHILD SUPPORT; NEW YORK
STATE DMV; FDNY METRO-TECH,

               Defendants.

25-CV-2232 (LLS)

ORDER OF DISMISSAL

LOUIS L. STANTON, United States District Judge:

Plaintiff, who is appearing *pro se*, brings this action under 42 U.S.C. §§ 1983, 1985, and

the Fair Credit Reporting Act, 15 U.S.C. § 1681 *et seq*. He asserts claims for alleged violations

of his rights in connection with child support proceedings and related matters, including

suspension of his driver's license and professional license, reports to consumer reporting

agencies about unpaid child support, and denial of his passport, which interfered with Plaintiff's

planned stay at a resort in Mexico. By order dated March 11, 2026, the Court granted Plaintiff's

amended request to proceed *in forma pauperis*, that is, without prepayment of fees.

### STANDARD OF REVIEW

The Court must dismiss an *in forma pauperis* complaint, or any portion of the complaint,

that is frivolous or malicious, fails to state a claim on which relief may be granted, or seeks

monetary relief from a defendant who is immune from such relief. 28 U.S.C. § 1915(e)(2)(B);

*see Livingston v. Adirondack Beverage Co.*, 141 F.3d 434, 437 (2d Cir. 1998). The Court must

also dismiss a complaint when the Court lacks subject matter jurisdiction of the claims raised.

*See* Fed. R. Civ. P. 12(h)(3).

While the law mandates dismissal on any of these grounds, the Court is obliged to construe *pro se* pleadings liberally, *Harris v. Mills*, 572 F.3d 66, 72 (2d Cir. 2009), and interpret them to raise the "strongest [claims] that they *suggest*," *Triestman v. Fed. Bureau of Prisons*, 470 F.3d 471, 474 (2d Cir. 2006) (internal quotation marks and citations omitted). But the "special solicitude" in *pro se* cases, *id*. at 475 (citation omitted), has its limits – to state a claim, *pro se* pleadings still must comply with Rule 8 of the Federal Rules of Civil Procedure, which requires a complaint to make a short and plain statement showing that the pleader is entitled to relief.

## BACKGROUND

The following facts are drawn from the amended complaint.[1] A male child, T.L., was born in 2012, and Plaintiff attaches a birth certificate listing him as the child's father. (ECF 6 at 23.) The child lives with his mother in New Jersey. In 2019, when the child was seven years old, the mother initiated, in New Jersey, proceedings to collect child support. Plaintiff resided in Bronx County, and the child support proceedings were transmitted to Bronx County.

Plaintiff did not appear at a May 21, 2019 hearing in the Family Court, Bronx County, and a temporary order of support issued directing Plaintiff to pay $93.00 weekly, plus $25 weekly for child care. (*Id.* at 305-07.) Plaintiff attaches a certificate of service that states that Sinead Lindsay, identified as Plaintiff's sister, was served with a copy of the Bronx County Family Court summons and petition on April 23, 2019 (*id.* at 28); Plaintiff argues in this action that service was invalid. Support Magistrate Paul Ryneski issued Findings of Fact dated June 11, 2019, that Plaintiff had been "duly served with a summons and petition and failed to appear on

---

[1] The Court quotes from the amended complaint verbatim. All spelling, grammar, and punctuation are as in the original unless noted otherwise.

June 11, 2019." [2] (*Id.* at 30, 308.) Nothing in the amended complaint or exhibits suggests that this determination was ever vacated or overturned on appeal.

Plaintiff also filed a claim with the New York City Comptroller on an unspecified date arguing, among other things, that the summons did not bear the seal of the court, that information about his sister on the certificate of service for the child support petition was incorrect, and that Support Magistrate Ryneski engaged in "coercion," despite Plaintiff's "explicit statement that he did not volunteer for the proceedings." (*Id.* at 90.)

Plaintiff attaches a consumer report indicating that the Division of Child Support Enforcement (DCSE) reported adverse information to Transunion, a consumer reporting agency. (*Id.* at 141.) Plaintiff states that reporting such information has damaged his credit. At some point, Plaintiff's driver's license was suspended.

On April 8, 2021, after Plaintiff's income tax refund was intercepted, which resulted in a payment of nearly $2000 toward child support arrears, Plaintiff went to the Department of Motor Vehicles (DMV). He was told that renewal of his driver's license was unavailable because a child support balance was still owed. (*Id.* at 117.)

Plaintiff had planned a trip to a resort in Mexico for April 18-22, 2021, and he submits receipts from "Cabo Villas" reflecting payments of hundreds of dollars. (*Id.* at 113.) Plaintiff was unable to travel because his passport was denied based on unpaid child support arrears. (*Id.*)

On June 2, 2022, Plaintiff passed a test for "torch use," administered by the Fire Department of New York (FDNY). (*Id.* at 158.) He was initially informed that he lacked an employer letter, which he appears later to have obtained. (*Id.* at 162-63.) Plaintiff further attaches

---

[2] Plaintiff brought his own petition in the Bronx County Family Court, arguing that child support proceedings had been initiated in New Jersey, which lacked personal jurisdiction over him. (*Id.* at 95-96.)

a letter, possibly to the FDNY, in which he argues that his certificate of fitness should not be suspended because he had brought legal challenges to the child support orders. (*Id.* at 161.)

Plaintiff also attaches an August 9, 2022 order from the Bronx County Family Court denying, based on his failure to appear, his petition for a modification of order of support and modification of arrears. (*Id.* at 155.) Many of the exhibits to the amended complaint consist of motions that Plaintiff filed in the Bronx County Family Court, in which he argued, among other things, that service of process was improper, that the support magistrate should recuse himself and has committed crimes, that Plaintiff is a "nature born person" (*id.* at 293), that "[c]hild support is nothing more th[a]n a contract" (*id.* at 121), and that he "did not volunteer to this program" for child support or to the jurisdiction of the court (*id.* at 84).[3] He also argues that state administrative agencies have usurped judicial authority, in violation of separation of powers provisions. (*Id.* at 121.)

Plaintiff appears to have filed suit in 2024, in the Civil Court of the State of New York, Bronx County, against the support magistrates, the Deputy Sheriff responsible for service of process, "NY/NJ Child Support Services," and the DMV. (*Id.* at 314.) It is unclear if that state court action was resolved or remains pending.

Plaintiff brings this action against "New York Child Support OCSS, "New Jersey Child Support," New York State DMV, "FDNY Metro-Tech," and "other defendants to be named." He seeks an order directing Defendants to enjoin credit reporting, license suspensions, and wage or tax refund garnishments, as well as orders dismissing the Family Court child support case for lack of jurisdiction, vacating Family Court orders, and imposing sanctions on the custodial

---

[3] Plaintiff argued that "Support Magistrate Paul Ryneski knew he had no consent from me other than from coercion. Making a money judgement knowing I did not volunteer . . . ." (*Id.* at 104.)

4

parent. Plaintiff seeks reinstatement of his driver's and professional licenses, as well as elimination of arrears and an order requiring removal of negative credit reporting related to child support. Plaintiff also seeks damages.

## DISCUSSION

**A.      Claims Against State Agencies**

Plaintiff sues two agencies of the State of New York ("New York Child Support OCSS" and the "New York State DMV") and an agency of the State of New Jersey ("New Jersey Child Support"). "[A]s a general rule, state governments may not be sued in federal court unless they have waived their Eleventh Amendment immunity, or unless Congress has abrogated the states' Eleventh Amendment immunity[.]" *Gollomp v. Spitzer*, 568 F.3d 355, 366 (2d Cir. 2009). "The immunity recognized by the Eleventh Amendment extends beyond the states themselves to state agents and state instrumentalities that are, effectively, arms of a state." *Id*.

The New York State DMV and the New York State DCSE, which operates the OCSS, constitute arms of the state that share in New York's Eleventh Amendment immunity. *See*, *e.g.*, *Feingold v. State of New York*, 366 F.3d 138, 149 (2d Cir. 2004) (holding that Section 1983 claims against the DMV are "clearly barred by the Eleventh Amendment because the DMV is a state agency"); *Haynie v. New York State Child Support Enf't Agency*, No. 1:25-CV-306 (MAD) (TWD), 2025 WL 1174018, at *2 (N.D.N.Y. Apr. 23, 2025) ("Eleventh Amendment immunity bars Plaintiff's complaint because the Defendant, New York State Division of Child Support Enforcement, is an agency of the state."); *Lions v. New York State Off. of Child Support Enf't*, No. 1:24-CV-7181 (GHW), 2025 WL 81421, at *3 (S.D.N.Y. Jan. 10, 2025) ("Plaintiff's claims against the NYS DCSE are barred by the Eleventh Amendment because the NYS DCSE is a state agency.").

Defendant "New Jersey Child Support" is an arm of the State of New Jersey. *See Flagg v. New Jersey*, No. 17-CV-02602 (PGS) (TJB), 2018 WL 4110949, at *2 (D.N.J. Aug. 29, 2018) (New Jersey Office of Child Support Services "is an agency of the Department of Human Services, [and] is entitled to immunity pursuant the Eleventh Amendment[.]"), *aff'd sub nom. Flagg v. Off. of Child Support Servs.*, 786 F. App'x 350 (3d Cir. 2019).

Neither nor New York nor New Jersey has waived its Eleventh Amendment immunity to suit in federal court, and Congress did not abrogate the states' immunity in enacting 42 U.S.C. §§ 1983, 1985-86. *See Trotman v. Palisades Interstate Park Comm'n*, 557 F.2d 35, 40 (2d Cir. 1977); *Forjone v. Dep't of Motor Vehicles*, 414 F. Supp. 3d 292, 300 (N.D.N.Y. 2019) ("[T]he NYS DMV and the NYS OFS are both immune from suit in federal court under §§ 1983, 1985, and 1986[.]"); *Shahin v. State,* 345 Fed. Appx. 815, 817 (3d Cir. 2009) (("The State has not waived its sovereign immunity under the Eleventh Amendment[.]"). The Eleventh Amendment therefore bars Plaintiff's Section 1983 and 1985 claims against Defendants New York State DMV, OCSS, and "New Jersey Child Support," whether for damages or injunctive relief, from proceeding in federal court.

Under the exception to Eleventh Amendment immunity articulated in *Ex Parte Young*, 209 U.S. 123 (1908), "[a] plaintiff may avoid the Eleventh Amendment bar to suit [in federal court] and proceed against individual state officers, as opposed to the state, in their official capacities, provided that his complaint (a) 'alleges an ongoing violation of federal law' and (b) 'seeks relief properly characterized as prospective.'" *In re Deposit Ins. Agency*, 482 F.3d 612, 618 (2d Cir. 2007) (citations omitted). Here, even if Plaintiff had named appropriate individual state officers in their official capacities, as explained below, Plaintiff does not state a claim for

injunctive relief to enjoin suspension or denial of Plaintiff's driver's license, passport, and occupational license.

**B.      No Jurisdiction to Review Child Support Orders**

Federal district courts lack authority to review a final state court order or judgment. *See Exxon Mobil Corp. v. Saudi Basic Indus. Corp.*, 544 U.S. 280, 291-92 (2005); *McKithen v. Brown*, 481 F.3d 89, 96 (2d Cir. 2007) (holding that 28 U.S.C. § 1331 "is a grant of original jurisdiction, and does not authorize district courts to exercise appellate jurisdiction over state-court judgments, which Congress has reserved to the Supreme Court, *see* 28 U.S.C. § 1257(a)." (citation omitted)).

District court review of claims is barred, under the so-called *Rooker-Feldman* doctrine, when four requirements are met: (1) the litigant lost in state court; (2) the litigant complains of injuries caused by a final state court order or judgment; (3) the litigant invites district court review and rejection of the final state court order or judgment; and (4) the final state court order or judgment was rendered before the district court proceedings commenced.[4] *Dorce v. City of New York*, 2 F.4th 82, 101 (2d Cir. 2021)

Here, Plaintiff challenges adverse orders, rendered before he filed this action, determining that he had been duly served with the summons and child support petition in the Bronx Family Court and directing him to pay child support. Plaintiff attaches to the amended complaint (1) a "Sheriff's Certificate of Service (personal service)," reflecting mailing to Plaintiff's address and personal service of the summons and petition on Plaintiff's sister at his house on April 23, 2019; and (2) Support Magistrate Ryneski's Findings of Fact, dated June 11,

---

[4] The *Rooker-Feldman* doctrine takes its name from two cases: *Rooker v. Fidelity Trust Co.*, 263 U.S. 413, 415-16 (1923), and *District of Columbia Court of Appeals v. Feldman*, 460 U.S. 462, 482-86 (1983).

2019, concluding that Plaintiff had been "duly served with a summons and petition and failed to appear on June 11, 2019," and calculating support payments.[5] (ECF 6 at 30, 308.) Plaintiff complains of injuries caused by those final state-court orders, and invites this court to review and reject those orders, asking for "dismissal of all child support obligations and arrears." (*Id.* at 3.) Because federal district courts lack jurisdiction to review state court orders, these claims must be dismissed for lack of jurisdiction.[6]

## C.    Due Process Claims

Plaintiff challenges the sanctions that he faced once child support arrears accrued, including suspension of his driver's license, denial of an occupational certificate, and denial of a passport. He alleges that he was denied due process in connection with these efforts to collect child support. Plaintiff's amended complaint does not name a defendant amenable to suit in connection with these claims, and as explained below, it would be futile to grant him leave to replead to do so because the allegations fail to state a claim on which relief can be granted.

---

[5] "Once a child support order has been entered . . . past due support is treated as a judgment by operation of law and is enforceable in the same manner as a judgment." *Lions*, 2025 WL 81421, at *5 (*quoting O'Brien v. Hansell*, No. 09-CV-629, 2010 WL 1371366, at *5 (E.D.N.Y. March 31, 2010)).

[6] Moreover, where no obstacle prevents a child support debtor from receiving a full and fair determination in the state courts, "[f]ederal courts may properly abstain from adjudicating such actions in view of the greater interest and expertise of state courts in this field." *Am. Airlines, Inc. v. Block*, 905 F.2d 12, 14 (2d Cir. 1990). "[C]alculation of support payments is the type of domestic relations issue that the [federal court] generally abstains from hearing." *Simmons v. NYS Dept of Soc. Servs.*, No. 19-CV-03633 (CM), 2019 WL 5810307, at *4 n.2 (S.D.N.Y. Nov. 5, 2019); *Lions v. New York State Off. of Child Support Enf't*, No. 1:24-CV-7181 (GHW), 2025 WL 81421, at *6 (S.D.N.Y. Jan. 10, 2025) ("Plaintiff's challenge to the amount of his child support obligations falls squarely within the domestic relations doctrine."). Plaintiff provides no factual support for his allegation that the Support Magistrate was "biased," and an appeal process was available to Plaintiff. Accordingly, nothing in the amended complaint suggests that Plaintiff's claims could not be fully determined in the state courts.

"The two threshold questions in any § 1983 claim for denial of procedural due process are whether the plaintiff possessed a liberty or property interest protected by the United States Constitution or federal statutes and, if so, what process was due before plaintiff could be deprived of that interest." *Green v. Bauvi*, 46 F.3d 189, 194 (2d Cir. 1995) (citing *Logan v. Zimmerman Brush Co.*, 455 U.S. 422, 428 (1982)).

When a plaintiff brings a procedural due process claim based on random or unauthorized acts by state employees, a post-deprivation hearing is the only form of due process that can be made available because the state could not have predicted that the deprivation would occur. *Hellenic Am. Neighborhood Action Comm. v. City of N.Y.*, 101 F.3d 877, 880 (1996). By contrast, "in situations where the State feasibly can provide a predeprivation hearing before taking property, it must do so regardless of the adequacy of the postdeprivation remedy." *Zinermon v. Burch*, 494 U.S. 113, 132 (1990); *Rivera-Powell v. New York City Bd. of Elections*, 470 F.3d 458, 467 (2d Cir. 2006) ("[W]hen the deprivation is pursuant to an established state procedure, the state can predict when it will occur and is in the position to provide a pre-deprivation hearing").

### 1.   Driver's license

Federal law requires states that accept certain federal funds to have procedures for suspending driver's licenses, professional licenses, and recreational licenses for noncustodial parents who owe child support arrears. *See* 42 U.S.C. § 666(a)(16).

New York law has an established procedure for notifying a child support debtor before suspending his driver's license and providing an opportunity for him to be heard. When child support arrears total at least four months of support payments, the Support Collection Unit "shall notify the support obligor in writing that his . . . continued failure to pay the support arrears shall result in notification to the department of motor vehicles to suspend the support obligor's driving

privileges[.]" N.Y. Soc. Serv. Law § 111-b(12)(b)(1). "A support obligor who has received such a notice may avoid the suspension" by (1) making full payment of all past due support; (2) making satisfactory payment arrangements for current and past due support, or (3) documenting that he is receiving public assistance or supplemental security income, or that his income falls below the self-support reserve. N.Y. Soc. Serv. Law § 111-b(12)(e).

If an obligor whose driving privileges were suspended did not actually receive the required notice, he "may at any time request a review" from the Support Collection Unit. *Id.* If the Support Collection Unit determines that the obligor either "has not accumulated" four months of support arrears, or that he meets any of the requirements in N.Y. Soc. Serv. Law § 111-b(12)(e) for avoiding suspension (such as making a payment arrangement or demonstrating income below certain levels), then the Support Collection Unit shall notify the DMV that the suspension of driving privileges shall be terminated. *See* N.Y. Soc. Serv. Law § 111-b(12)(f).

New York's established procedures provide for pre-deprivation notice and an opportunity to be heard before suspension of a driver's license. If, as a result of random and unauthorized action, a child support obligor does not receive the required notice, New York law also provides an opportunity for post-deprivation review and termination of the suspension. N.Y. Soc. Serv. Law § 111-b(12)(f); *Collins v. Saratoga Cnty. Support Collection Unit*, 528 F. App'x 15, 16 (2d Cir. 2013) ("[T]he procedural due process claims arising from the temporary suspension of [plaintiff's] driver's license [is] defeated by the availability of adequate pre- and post-deprivation administrative process under statute and regulation, *see, e.g.,* N.Y. Veh. & Traf. Law § 510; N.Y. Comp. Codes R. & Regs., tit. 18, § 347.25, as well Article 78 judicial proceedings under New York law."). Where such procedural remedies exist, regardless of whether the plaintiff avails

10

himself of it, "a due process claim must be dismissed." *Robinson v. Connell,* No. 9:05-CV-1428, 2011 WL 1103771, at *2 (N.D.N.Y. Mar. 23, 2011). Plaintiff's allegations thus do not state a Section 1983 due process claims based on the suspension of his driver's license, and this claim is dismissed without leave to replead. 28 U.S.C. § 1915(e)(2)(B)(ii).

### 2.    Passport

Plaintiff alleges that the denial of his passport based on child support arrears interfered with his planned trip to a resort in Mexico for April 18-22, 2021, and he submits receipts from "Cabo Villas" reflecting payments of hundreds of dollars. (ECF 6 at 113.) Plaintiff has not named a cognizable defendant for this claim in his amended complaint, and as explained below, it would be futile to grant a further opportunity to amend his complaint to do so.

Under federal law and regulations

> [a] passport . . . shall not be issued in any case in which the Secretary of State determines or is informed by competent authority that: . . . (8) [t]he applicant has been certified by the Secretary of Health and Human Services as notified by a State agency under 42 U.S.C. § 652(k) to be in arrears of child support in an amount exceeding $5,000.00.

22 C.F.R. § 51.70(a).

Denial of a passport implicates a protected liberty interest. *See Weinstein v. Albright*, 261 F.3d 127, 134 (2d Cir. 2001) ("[T]he denial of his passport application and revocation of his previously issued passport is a protected liberty interest . . . ."). The Court therefore examines the available process. Before a state certifies that an individual owes more than $5000 in child support arrears, it is required by statute to ensure that each individual is "afforded notice of such determination and the consequences thereof, and an opportunity to contest the determination." 42 U.S.C. § 654(31)(A). States must have "an administrative complaint procedure . . . to allow individuals the opportunity to request an administrative review" in order to correct errors made by state child support enforcement agencies. *See* 45 C.F.R. § 303.35(a). "[T]he framework

11

assures plaintiff a meaningful forum before the state agency, because it is that state agency which determines whether the person will be certified." *Weinstein*, 261 F.3d at 135. The established state procedure in New York provides for pre-deprivation notice, and post-deprivation notice is available to remedy errors.[7] *Id.* at 136-37 ("There is no question then, with respect to the denial of passport applications . . . that the statute provides for timely notice and a meaningful opportunity to contest [child support arrears], and therefore comports with due process."). Plaintiff therefore fails to state a procedural due process claim under the Fourteenth Amendment in connection with the denial of his passport.

Plaintiff argues that any arrears that he owes stem from child support proceedings that are unlawful, as lacking in due process, so applying the passport-denial mechanism to him is unconstitutional and must be vacated. As explained above, the federal court cannot review the Family Court's determination that Plaintiff was properly served with the child support petition, and cannot review any determination made in the Family Court as to the amount of support payable or the amount of arrears accrued. *McKithen*, 481 F.3d at 96 (holding that federal district courts are not authorized "to exercise appellate jurisdiction over state-court judgments"). Plaintiff's passport was denied based on child support determinations in effect at the time of his application, and any challenge to the support arrears could only be raised in the state agency and Family Court. *See Weinstein*, 261 F.3d at 135 ("[T]he framework assures plaintiff a meaningful forum before the state agency, because it is that state agency which determines whether the

---

[7] Plaintiff attaches documents reflecting that contempt proceedings were initiated against him for violating a support order (ECF 6 at 65.) The Notice of Violation of Support Order provides: "Notice to Payor: This petition states that you did not obey a support order. It asks a court to find you in contempt. The court must hold a hearing to decide if you are obeying the order. If not, the Court must decide if your failure to pay was willful. A failure to pay is willful if you were able to pay, but did not. . . ." (*Id.*)

person will be certified."). The Court therefore declines to grant Plaintiff leave to replead his claim arising from the denial of his passport.

## D.    Claims against FDNY

Plaintiff's claims against the FDNY must be dismissed because the FDNY lacks the capacity to be sued in the name of the agency. An entity's capacity to be sued is generally determined by the law of the state where the court is located. *See* Fed. R. Civ. P. 17(b)(3); *Edwards v. Arocho*, 125 F.4th 336, 354 (2d Cir. 2024) ("A plaintiff cannot bring a claim against a municipal agency that does not have the capacity to be sued under *its municipal charter*." (emphasis in original)). New York City's Charter requires suits against agencies of the City of New York to be brought against the City of New York, rather than the agency, unless state law provides otherwise. N.Y. City Charter ch. 17, § 396 ("[A]ll actions and proceedings for the recovery of penalties for the violation of any law shall be brought in the name of the city of New York and not in that of any agency, except where otherwise provided by law.").

The FDNY does not have the power to sue and be sued in its own name. *See* N.Y. City Charter ch. 19, §§ 481-494 (describing structure and powers of the FDNY); *Olabopo v. Gomes*, No. 13-CV-5052, 2016 WL 5477586, at *3 (E.D.N.Y. Sept. 29, 2016) (holding that "the FDNY, and the New York City Department of Buildings . . . are non-suable entities"). Plaintiff's claims against the FDNY are therefore dismissed.

Moreover, the Court declines to grant Plaintiff leave to replead to name the City of New York in lieu of the FDNY because it would be futile to do so. Plaintiff alleges that he worked as a plumber's mechanic for "Headquarters Mechanical, Inc." until his employment was terminated on March 7, 2025. (ECF 6 at 5.) Plaintiff attaches to the amended complaint a letter reflecting that he passed a certificate of fitness test for "torch use" but required an employer letter for certification, which he appears to have eventually obtained. (*Id.* at 58.) Plaintiff was also unable

13

to access online systems to schedule certification appointments anonymously. (*Id.* at 57 ("This Certificate of Fitness is not renewable on FDNY Business anonymously.")) Plaintiff attaches a letter regarding his certificate of fitness, in which he stated that he had challenged his child support obligation and argued that the child support debt therefore should not interfere with his occupational certificate. (*Id.* at 61.) As with Plaintiff's claim for the denial of his driver's license, Plaintiff's remedy, if any, for challenging restrictions on his occupational licenses based on child support arrears lies with the Support Collection Unit and the Family Court. *See Weinstein*, 261 F.3d at 135. It would therefore be futile to grant Plaintiff leave to replead his claim for denial of his certificate of fitness in federal court.

**E.    Equal Protection**

Plaintiff asserts that his driver's license was suspended based on his income in violation of his right to equal protection of the law. (ECF 6 at 82 ("[C]hild support was revoking the license but also targeting the low income who have problems paying").[8] Having a low income or being in need of financial assistance is not a protected class under the Equal Protection Clause. *See Maher v. Roe*, 432 U.S. 464, 471 (1977) ("[T]his Court has never held that financial need alone identifies a suspect class for purposes of equal protection analysis."); *Bush v. City of Utica*, 558 F. App'x 131, 134 (2d Cir. Mar. 17, 2014) (rejecting the assertion that "low socio-economic status . . . demands an elevated form of scrutiny").

A plaintiff who does not allege membership in a protected class may state a cognizable claim of discrimination in violation of the Equal Protection Clause if he establishes that he "has been intentionally treated differently from others similarly situated and that there is no rational

---

[8] As Plaintiff is aware, he can seek modification of a support order that exceeds his ability to pay. (ECF 6 at 255) (order issued August 9, 2022, denying Plaintiff's application for modification of support order based on his failure to appear).

basis for the difference in treatment." *Analytical Diagnostic Labs, Inc. v. Kusel*, 626 F.3d 135, 140 (2d Cir. 2010) (quoting *Vill. of Willowbrook v. Olech*, 528 U.S. 562, 564 (2000)). In order to prevail in a class-of-one equal protection claim, a "plaintiff[] must show an extremely high degree of similarity between themselves and the persons to whom they compare themselves." *Ruston v. Town Bd. of Skaneateles*, 610 F.3d 55, 59 (2d Cir. 2010) (internal quotation marks omitted).

Here, Plaintiff does not allege any facts showing how he has been treated differently than other similarly-situated individuals with child support orders or who owe support arrears. Moreover, the State of New York has a rational and legitimate basis for suspending Plaintiff's driver's license due to his failure to pay child support. *See Collins v. Saratoga Cnty. Support Collection Unit*, No. 12-CV-0494 (GLS) (RFT), 2012 WL 2571288, at *7 (stating, in the due process context, that "the governmental interest in efficiently collecting child support from delinquent obligors is considerable"), *aff'd*, 528 F. App'x 15 (2d Cir. June 20, 2013). Plaintiff therefore does not state an Equal Protection claim based on his poverty.

Plaintiff also contends that child support enforcement and related state actions disproportionately target people of his "ethnicity" (*id.* at 82), and he alleges that there is discriminatory and unequal enforcement in violation of the Fourteenth Amendment's Equal Protection Clause. He relies on documents that argue that court fines and fees disproportionately burden people of color, implying an equal-protection problem in how New York and New Jersey child support systems operate.

"[O]fficial action will not be held unconstitutional solely because it results in a racially disproportionate impact." *Vill. of Arlington Heights v. Metro. Hous. Dev. Corp.*, 429 U.S. 252, 264-65 (1977). Plaintiff's allegations might be liberally construed, however, as asserting either

15

that "a facially neutral law or policy . . . has been applied in an intentionally discriminatory manner [or] that a facially neutral statute or policy has an adverse effect and that it was motivated by discriminatory animus." *Brown v. City of Oneonta, N.Y.*, 221 F.3d 329, 337 (2d Cir. 2000).

Plaintiff has not alleged facts about his race or included any facts showing that facially neutral child support laws were "applied in an intentionally discriminatory manner" or "motivated by discriminatory animus."[9] *Id.* He alleges only that child support enforcement laws have a disproportionate impact on people of his "ethnicity" (ECF 6 at 82.) "Disproportionate impact is not irrelevant, but it is not the sole touchstone of an invidious racial discrimination. Proof of racially discriminatory intent or purpose is required to show a violation of the Equal Protection Clause." *Vill. of Arlington Heights*, 429 U.S. at 265 (citation and quotation marks omitted). Plaintiff's allegations that child support laws have a racially discriminatory impact thus fail to state a claim on which relief can be granted. 28 U.S.C. § 1915(e)(2)(B)(ii).

**F.      FCRA**

Federal law requires each State to adopt procedures "requiring the State to report periodically to consumer reporting agencies . . . the name of any noncustodial parent who is delinquent in the payment of support, and the amount of overdue support owed by such parent." 42 U.S.C.A. § 666(a)(7). In turn, New York law requires that each social services district shall "report periodically to consumer reporting agencies (as defined in section 603(f) of the Fair Credit Reporting Act (15 U.S.C. § 1681a(f)) information regarding past-due support owed by the parent owing support." N.Y. Soc. Serv. Law § 111-c.

---

[9] The custodial parent who initiated the proceedings indicates in a document that Plaintiff has attached to the amended complaint that both she and Plaintiff are Black.

Plaintiff invokes the FCRA, apparently bringing this claim against non-party DCSE, which reported the arrears to Transunion. (ECF 6 at 41.) DSCE is, as mentioned above, an arm of the state entitled to Eleventh Amendment immunity from suit in federal court unless Congress has abrogated that immunity. Nothing in the FCRA suggests that it waives the Eleventh Amendment immunity of states. *See Haynie*, 2025 WL 1174018, at \*3 ("The Fair Credit Reporting Act, which was enacted 'to require that consumer reporting agencies adopt reasonable procedures for meeting the needs of commerce . . .,' is silent as to a state or state agency's sovereign immunity. 15 U.S.C. § 1681.").

Moreover, even if there were a defendant amenable to suit, Plaintiff's allegations that reporting his child support obligation was inaccurate, in light of his challenge to the underlying obligation, does not state a claim on which relief can be granted.[10] Section 1681s-2(a) of the FCRA states that persons "shall not furnish any information relating to a consumer to any consumer reporting agency if the person knows or has reasonable cause to believe that the information is inaccurate." 15 U.S.C. § 1681s–2(a)(1)(A). Nevertheless, "there is no private cause of action for violations of Section 1681s–2(a)." *Longman v. Wachovia Bank, N.A.*, 702 F.3d 148, 151 (2d Cir. 2012). This subsection of the FCRA "shall be enforced exclusively . . . by the Federal agencies and officials and the State officials identified in section 1681s of this title." 15 U.S.C. § 1681s–2(d). Thus, even if DCSE were not immune from suit in federal court for allegedly reporting erroneous information, Plaintiff's allegations that DCSE reported inaccurate information fail to state a claim on which relief can be granted as there is no private right of action for such a claim.

---

[10] In addition, Plaintiff's amended complaint makes clear that his many challenges to the determination of his child support obligations and arrears have been unsuccessful; these obligations therefore cannot be considered inaccurate.

**G.      Other challenges**

Plaintiff rehashes arguments that have been repeatedly rejected. Plaintiff contends that he is a "nature born person" (*id.* at 293), that "[c]hild support is nothing more th[a]n a contract" (*id.* at 121), and that he "did not volunteer to this program" for child support or to the jurisdiction of the court (*id.* at 84). These arguments have repeatedly been rejected as frivolous and, in some cases, deemed vexatious. *See, e.g.*, *John of the Family Springer v. Stack*, No. 24-CV-6672 (LTS) (S.D.N.Y. Apr. 14, 2025) (dismissing complaint alleging that plaintiff could not be converted from "[a] man born equally free and independent[] to the status of non-custodial parent" and that he "did not consent to coercive collection methods"); *Goodwin v. Bronx Family Court*, No. 24-CV-4103 (LTS) (S.D.N.Y. Sept. 9, 2024) (dismissing complaint against Support Magistrate Paul Ryneski and others alleging that plaintiff "appeared by Special Visitation as a Private Citizen (Natural Man)"); *Kejuan of the Family Muchita v. Stack*, No. 25-CV-00285 (VSB) (SDA), 2026 WL 884775 at * 2, 7 (S.D.N.Y. Jan. 23, 2026) (dismissing complaint, in which the plaintiff alleged that he had served Deputy Commissioner of Child Support Services with a "Notice of Termination of Involuntary Participation," and noting the potential for sanctions against plaintiff because the arguments "repeatedly have been found to be without merit" and "this action is one among many similar actions that have been filed in district courts around the country and strikes the Court as part of a pattern of abusive and vexatious litigation").

Plaintiff also raises a separation of powers argument. Because this claim arises under the New York Constitution, and the Court declines to exercise supplemental jurisdiction of any of Plaintiff's state law claims, 28 U.S.C. § 1367(c)(3), the Court need not consider it. *See*, *e.g.*, *Carnegie-Mellon Univ. v. Cohill*, 484 U.S. 343, 350 (1988) ("[W]hen the federal-law claims have dropped out of the lawsuit in its early stages and only state-law claims remain, the federal court should decline the exercise of jurisdiction." (footnote omitted)).

18

The Court notes, however, that state courts have held that New York's Family Court Act § 439 provides specific safeguards that prevent a separation of powers violation:

> We find without merit respondent's contention that Family Court Act § 439 is unconstitutional insofar as it authorizes the transfer of Family Court's powers from constitutionally elected Judges to nonjudicial, unelected employees of the Unified Court System. NY Constitution, article VI, § 30 vests broad power in the Legislature to make procedural rules for the courts (*Cohn v Borchard Affiliations*, 25 NY2d 237, 247). The Legislature, in enacting Family Court Act § 439, has recognized the need to "[e]xpand the powers of hearing examiners in child support cases and require the use of such hearing examiners to expedite child support determinations." . . . Even if the authority vested in Family Court Hearing Examiners could be shown to infringe in some way upon the province of Family Court Judges, any such infringement would not be an unconstitutional grant of authority because the final authority to review determinations made by Hearing Examiners is reserved for Family Court Judges.

*Carella v. Collins*, 144 A.D.2d 78, 82 (3d Dep't 1989); *see also Boscherini v. Borgia*, 229 A.D.2d 744, 745 (1996) (rejecting challenge to state law permitting referral of family court matters to hearing examiner, holding that it was not an unlawful delegation of family court's powers to nonjudicial, elected employees and did not violate New York's Constitution).

### LEAVE TO AMEND

Generally, a court should not dismiss a *pro se* complaint "without granting leave to amend at least once when a liberal reading of the complaint gives any indication that a valid claim might be stated." *Dolan v. Connolly*, 794 F.3d 290, 295 (2d Cir. 2015) (quoting *Chavis v. Chappius*, 618 F.3d 162, 170 (2d Cir. 2010) (internal quotation marks omitted)). A court nevertheless has inherent power to dismiss without leave to amend or replead in "where . . . the substance of the claim pleaded is frivolous on its face," *Salahuddin v. Cuomo*, 861 F.2d 40, 42 (2d Cir.1988) (citation omitted), or where amendment would otherwise be futile, *Hill v. Curcione*, 657 F. 3d 116, 123-24 (2d Cir. 2011); *see also Shapiro v. McManus*, 577 U.S. 39, 45 (2015) (holding that federal-question jurisdiction is lacking where the claims are "wholly insubstantial and frivolous," "essentially fictitious," or "obviously without merit" (internal

quotation marks and citations omitted)). Plaintiff's amended complaint gives no indication that a cognizable claim can be pleaded, and the Court therefore declines to grant further leave to amend.

## CONCLUSION

Plaintiff's federal claims are dismissed for the reasons set forth in this order and the Court declines, under 28 U.S.C. § 1367(c)(3), to exercise supplemental jurisdiction of Plaintiff's state law claims.

The Court directs the Clerk of Court to enter judgment in this action.

SO ORDERED.

Dated:    April 8, 2026
         New York, New York

_____Louis L. Stanton_____
         Louis L. Stanton
         U.S.D.J.

20